UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                      :

INDEMNITY INSURANCE COMPANY OF    :
NORTH AMERICA,                                 :

                   Plaintiffs,      :
                                       :   06 Civ. 0615 (BSJ)
                v.                  :   Consolidated with:
                                       :   06 Civ. 2557
K-LINE AMERICA, INC., ET. AL.,   :   06 Civ. 2956
                                     :   06 Civ. 2962
                 Defendants.     :   06 Civ. 3038
                                     :   06 Civ. 3040
----------------------------------------x   06 Civ. 3042
                                   :
K-LINE AMERICA, INC., ET. AL.    :
                                   :   **Opinion & Order**
                 Third-Party     :
                 Plaintiffs,     :
                                     :
                v.                  :
                                   :
WORLD COMMERCE SERVICES, LLC, ET. AL.,  :
                                   :
                 Third-Party     :
                 Defendants.    :
                                   :
----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    The seven cases consolidated herein arise out of a 30-car
train derailment and involve more than a dozen parties who have
filed numerous pleadings and amended pleadings, including
various complaints, third-party complaints, crossclaims, and

1

counterclaims.[1]  Before the Court are (1) the Motion of Third-Party Defendant Plano Molding Co. ("Plano") to Dismiss the Third-Party Complaint of Defendants / Third-Party Plaintiffs K-Line America, Inc. ("KLA") and Kawasaki Kisen Kaisha Ltd. ("Kawasaki") (jointly, "K-line"); (2) the Motion of Third-Party Defendant CMT International, Inc. ("CMT") to Dismiss the Third-Party Complaint of K-Line; and (3) Plano's Motion to Dismiss the Third-Party Complaint of Defendant / Third-Party Plaintiff Union Pacific Railroad ("Union Pacific").  All three Motions assert, inter alia, lack of personal jurisdiction.  For the reasons stated herein, all three Motions to Dismiss are GRANTED for lack of personal jurisdiction.  The Court does not dismiss the Third-Party Complaints of K-Line and Union Pacific insofar as they assert causes of action against Third-Party Defendants other than Plano and CMT.

**The Parties**

Defendant / Third-Party Plaintiff Kawasaki, a Japanese corporation with its principal place of business in Japan, is a common carrier that provides "intermodal" transportation across ocean and land routes.  Defendant / Third-Party Plaintiff KLA, a Michigan corporation with its principal place of business in

---

[1] The Court discusses only the parties and events which bear on the merits of the three jurisdictional Motions to Dismiss at issue here.

Virginia, acts as an agent for Kawasaki.[2]  Defendant / Third-Party Plaintiff Union Pacific, a Delaware corporation with its headquarters in Nebraska, operates rail lines throughout the United States.  Third-Party Defendant Plano, an Illinois corporation with its principal place of business in Illinois, designs and manufactures storage systems and organizers such as fishing tackle boxes, tool boxes, and cosmetic organizers. Third-Party Defendant CMT, also an Illinois corporation with its principal place of business in Illinois, imports injection molds and exports electronic components such as integrated circuit chips.  Third-Party Defendant Kunshan Yuanjin Plastic & Electronic Co., Ltd. ("Kunshan"), a business entity of unknown form and domicile, operates a manufacturing business in China.

**Background and Procedural History**

Plano allegedly contracted with CMT to purchase certain steel molds used in its manufacturing business.  The molds were allegedly manufactured by Kunshan in China, shipped to California, and transferred to Union Pacific for delivery by train to Illinois.  On or about April 21, 2005, the train allegedly derailed at or near Tyrone, Oklahoma due to improper packing and stowing of the steel molds.

---

[2] It is contested whether KLA is itself a common carrier.

On January 25, 2006 Plaintiff Indemnity Insurance Company of North America ("Indemnity"), as subrogee of its insureds Arvin Meritor/Arvin Sango Sales Corporation and XL Screw, filed a Complaint against Defendants KLA, Kawasaki, and Union Pacific, alleging various causes of action relating to cargo damaged in the train derailment, specifically, auto parts and screws.  KLA, Kawasaki, and Union Pacific are allegedly common carriers responsible for delivery of the damaged cargo.  On February 9, 2006, Defendants / Third-Party Plaintiffs KLA and Kawasaki (jointly, "K-Line") filed a Third-Party Complaint sounding in admiralty and maritime law seeking indemnification from, <u>inter alia</u>, Third-Party Defendants Plano Molding Co. ("Plano") and CMT International, Inc. ("CMT").  K-Line alleges that all its claims against Plano and CMT are subject to admiralty and maritime jurisdiction.  On March 15, 2006, the Court referred this matter to Magistrate Judge Debra C. Freeman for general pretrial supervision.

On March 17, 2006, Defendant / Third-Party Plaintiff Union Pacific filed a Third-Party Complaint asserting negligence claims and claims sounding in admiralty and maritime law against, <u>inter alia</u>, Plano and CMT.  Union Pacific alleges that the Court has diversity jurisdiction over its negligence claims pursuant to 28 U.S.C. § 1332 and admiralty and maritime jurisdiction over its admiralty claims.

4

On March 24, 2006, Third-Party Defendant CMT moved to dismiss the Third-Party Complaint of K-Line pursuant to Rules 12(b)(2) and (12)(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  On May 1, 2006, Third-Party Defendant Plano moved to dismiss the Third-Party Complaint of K-Line pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue.  On May 31, 2006 Plano also moved to dismiss the Third-Party Complaint of Union Pacific pursuant to the same Rules and on the same grounds.  Magistrate Judge Freeman granted limited jurisdictional discovery at a conference with all the parties on September 26, 2006.  Post-discovery supplemental memoranda and affidavits were fully submitted as of March 15, 2007.

**Discussion**

**I.   Standard of Review**

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); Credit Lyonnais Sec. (USA) Inc. v.

5

Alcantara, 183 F.3d 151, 153 (2d Cir. 1999).  The Court decides the instant Motions with the benefit of jurisdictional discovery but without an evidentiary hearing.

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the [Third-Party] plaintiff bears the burden of establishing that the Court has jurisdiction over the [Third-Party] defendant" by a preponderance of the evidence. DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001) (quotation omitted); Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). Since the Court has not conducted an evidentiary hearing, the Court construes all pleadings and affidavits in the light most favorable to the Third-Party Plaintiffs and resolves all doubts in their favor.  Id.; DiStefano, 286 F.3d at 84.  However, the Third-Party Plaintiffs must assert facts sufficient to establish jurisdiction and cannot merely rely on their pleadings:

> [T]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations.  After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.

Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  Mere conclusory allegations are insufficient to support a *prima facie* showing of personal jurisdiction.  Jazini by Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998); Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C., 288 F. Supp. 2d 482, 484 (S.D.N.Y. 2003).

## II.  Personal Jurisdiction over Plano

In both admiralty and diversity cases, the law of the forum state -- here, New York -- determines whether the Court has personal jurisdiction over a party.  Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille, 937 F.2d 44, 50 (2d Cir. 1991) (admiralty); Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990) (diversity).  If the forum state's law supports jurisdiction, then the Court must determine whether jurisdiction comports with constitutional due process requirements, namely, that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotations omitted); see Hanson v. Denckla, 357 U.S. 235 (1958).  For the following reasons, New York Law does not support personal jurisdiction over Plano.

### A.   General Personal Jurisdiction Under CPLR § 301: "Doing Business"

K-Line argues that the Court has jurisdiction over Plano pursuant to Section 301 of the New York Civil Practice Law and Rules ("CPLR").[3]  Section 301, as construed by New York courts, authorizes general personal jurisdiction over a foreign corporation if the corporation is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." Landoil, 918 F.2d at 1043 (quoting McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323 (1981))(citing cases).  The foreign corporation must be present in New York "'not occasionally or casually, but with a fair measure of permanence and continuity.'" Id. (quoting Tauza v. Susquehanna Coal Corp., 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)).

> New York courts have generally focused on the following indicia of jurisdiction: [1] the existence of an office in New York; [2] the solicitation of business in New York; [3] the presence of bank accounts or other property in New

---

[3] It is uncontested that there is no colorable basis for long-arm jurisdiction over Plano or CMT pursuant to Section 302 of the CPLR because neither the underlying transaction nor the underlying tort took place in New York or had any effect in New York.  See N.Y. C.P.L.R. § 302(a); Fontanetta v. Am. Bd. of Int'l Medicine, 421 F.2d 355, 357 (2d Cir. 1970) ("[T]he defendant [must] 'transact' business in the state, [and] the cause of action must 'arise' from the business so transacted."); Data Comm., Inc. v. Dirmeyer, 514 F. Supp. 26, 30 (E.D.N.Y. 1981) ("[T]he movant must demonstrate a more direct injury within the State and a closer expectation of consequences within the State than an indirect financial loss . . . .") (quotations omitted).

> York; and [4] the presence of employees or agents in New
> York. However, the solicitation of business alone will not
> justify a finding of corporate presence in New York with
> respect to a foreign manufacturer or purveyor of services.

Id. at 1043-44 (quotations omitted).  Under the so-called

"solicitation plus" test for jurisdiction, the Court first

determines whether a foreign corporation's solicitation in New

York is substantial and continuous, and if it is, then the

corporation is properly subject to general personal jurisdiction

under Section 301 so long as the corporation also "engages in

other activities of substance in the state."  Overseas Media,

Inc. v. Skvortsov, 407 F. Supp. 2d 563, 569 (S.D.N.Y. 2006)

(citing Landoil, 918 F. 2d at 1044); see Beacon Enters., Inc. v.

Menzies, 715 F.2d 757, 763 (2d Cir. 1983) ("To sustain personal

jurisdiction, New York courts require substantial solicitation

that is carried on with a considerable measure of continuity . .

. .") (quotations omitted).  The exercise of jurisdiction under

CPLR 301 is "a fact-sensitive determination requiring a

balancing of all relevant factual circumstances."  Landoil, 918

F.2d at 1044.

## B.   Plano's Contacts with New York

Viewed in the light most favorable to K-Line, the

pleadings, affidavits, and discovery materials establish the

following facts: Plano is an Illinois corporation, and its

headquarters are located in Plano, Illinois.  Plano has no

office or employees in New York.  Plano does not sell its
products directly to consumers in New York.  Plano sells its
products from its headquarters in Illinois to retail stores who
have branches in New York, and those retail stores then re-sell
its products to consumers.  At least 22 retail stores in New
York carry Plano's merchandise, including large national
retailers like Wal-Mart and Lowe's.  Plano sales employees in
Illinois sometimes visit retailers in New York who purchase
Plano products.  (Hurt Dep. 37-39.)[4]  Plano's sales in New York
constitute between 2.2% and 2.7% of its total sales.  (K-Line
Mem. Opp. 7; Siroky Aff. ¶ 25.)  Plano has made more than 2000
shipments to New York, and its total sales in New York exceed $9
million.  Plano's website directs visitors to retail stores in
New York and elsewhere that carry its products.

       Plano uses a sales representative located in New York, the
Thomas F. Gowen Company ("Gowen"), to service its retail
accounts in New York.  (Hurt Dep. 51.)  Plano pays Gowen on a
commission basis to find customers for Plano's products in New
York.  (Hurt Dep. 52.)

       Plano uses an international exporter based in New York, the
G. Hirschfeldt Company, L.L.C., ("Hirschfeldt").  (K-Line Mem.
Opp. 8; Siroky Aff. ¶ 26.)  Their arrangement proceeds as

---

[4] Tom Hurt is the senior vice president of sales marketing and customer
services at Plano Molding Company.

follows: Hirschfeldt places and pays for an order with Plano's headquarters, Plano ships the goods to Hirschfeldt in New York, and Hirschfeldt then ships the goods to international buyers it has solicited.  (Hurt Dep. 46.)  None of the goods Hirschfeldt purchases from Plano are sold in New York.

Plano also has a relationship with two local fishermen in New York.  These fishermen -- called "pro staff" -- receive new Plano products and other promotional materials from Plano.  The pro staff attend events such as store openings to promote Plano products.  The pro staff receive no compensation from Plano apart from promotional materials.

Plano regularly advertises in 15-20 magazines, some of which circulate in New York.  (Hurt Dep. 41.)  The purpose of its print advertisements is to make its products known to customers who read those magazines, some of whom live in New York.  (Id.)  Plano also advertises in five or six weekly television shows which are seen by people who live in New York.  (Hurt Dep. 43.)

There is a telephone listing for "Plano Molding" in New York, but it is maintained by DoubleClick, Inc., not Plano.  Plano representatives attended a toy fair in New York in the early/mid 1990s.  (Hurt Dep. 18-20)  During the fair, Plano rented a hotel room with the same address as the telephone listing.  (Id.)

In 1991, Plano filed an action in this District against two companies that it claimed were infringing its patent rights. See Plano Molding Co. v. Red Box Toy USA Inc., No. 91 Civ. 4613 (S.D.N.Y. Jul. 9, 1991).

C.   **Analysis**

For the following reasons, the facts asserted do not establish that Plano is engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence in New York under CPLR § 301.  K-Line has not asserted facts which show that Plano maintains an office or other physical presence in New York.  K-Line has not asserted facts which show that Plano has bank accounts or any other property in New York, apart from the above-mentioned products available for sale at retail stores.  K-Line has not asserted facts which show that Plano has employees or agents in New York, or that Plano engages in substantial solicitation of business by Plano in New York.  Accordingly, K-Line has failed to assert facts which establish general personal jurisdiction over Plano.

1.   **Indirect Sales in New York**

K-Line has not asserted facts which show that Plano engages in the type or volume of sales activity that constitutes substantial solicitation under Section 301 of the CPLR.  Plano does not sell its products directly to consumers.  Plano sells its products to retailers, and those retailers in turn re-sell

12

Plano's products to consumers.  Courts in this District have refused to find general personal jurisdiction under CPLR § 301 where a foreign corporation engaged in precisely this sort of indirect distribution.  See Riviera Trading Corp. v. Oakley, Inc., 944 F. Supp. 1150, 1156 (S.D.N.Y. 1996).

When determining whether solicitation is substantial, courts tend to look to the percentage of a foreign corporation's revenue that is attributable to New York.  Overseas Media, 407 F. Supp. 2d at 569.  "The shipment of goods into New York does not ipso facto constitute 'doing business.'"  Beacon Enters., 715 F.2d at 762; see Riviera, 944 F. Supp. at 1156.  Courts in this District regularly conclude that foreign corporations are not subject to general personal jurisdiction in New York where they derive less than 5% of their overall revenue from sales to customers in New York.  See Zipper v. Nichtern, No. 03 Civ. 5796, 2007 U.S. Dist. LEXIS 24761, at *18 (E.D.N.Y. March 30, 2007) (citing S.D.N.Y. cases); Aqua Prods., Inc., v. Smartpool, Inc., No. 04 Civ. 5492, 2005 WL 1994013, at *4 (S.D.N.Y. Aug. 18, 2005); Gross v. Bare Escentuals, Inc., No. 03 Civ. 3089, 2005 WL 823889, at *4 (S.D.N.Y. Apr. 8, 2005); Hennigan v. Taser Int'l, Inc., No. 00 Civ. 2981, 2001 WL 185122, at *2 (S.D.N.Y. Feb. 26, 2001); Riviera, 944 F. Supp. at 1156-57.  Because Plano's sales in New York constitute only 2.2-2.7% of its total

sales, Plano's sales in New York do not constitutes substantial
solicitation.

### 2.   Outside Sales Representatives and Pro Staff

The actions of Gowen employees, Hirschfeldt employees, and
the pro staff fishermen in New York are not attributable to
Plano because none of these individuals are Plano employees or
agents.  See Riviera, 944 F. Supp. at 1156 (concluding that
sales representatives are independent contractors whose
solicitation does not support general personal jurisdiction
under CPLR § 301).  K-Line has not asserted any facts which show
that Plano has control over the "manner and means" by which
Gowan, Hirschfeldt, or the pro staff conduct their duties,
Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111,
113-14 (2d Cir. 2000), and the deposition testimony of Mr. Hurt
indicates the opposite (see Hurt Dep. Tr. 45:20-24, 51:8-11,
79:19-21, 80:24-81:4).  Plano is not doing business in New York
simply because it pays another company located in New York to
act as its sales representative and find buyers in New York.
See Riviera, 944 F. Supp. at 1156 ("No court has ever held that
the maintenance of even a substantial sales force within the
state is a sufficient contact to assert jurisdiction in an
unrelated cause of action.") (quotations omitted).  Likewise,
Plano is not doing business in New York simply because it pays
an international exporter located in New York to find buyers for

14

its products in other countries.  Cf. Id.  Accordingly, Gowen
employees, Hirschfeldt employees, and the pro staff fishermen
are not Plano employees and their activities do not constitute
substantial solicitation of business in New York by Plano.

### 3.   In-house Sales Staff

Plano employs a sales staff at its headquarters in
Illinois, and its sales employees sometimes visit retailers in
New York who purchase Plano products.  (Hurt Dep. 37-40.)
Viewed in the light most favorable to K-Line, these visits
constitute solicitation of business in New York.  However, they
do not rise to the level of substantial solicitation, because K-
Line has not shown that they are sufficiently continuous or
permanent.  See Landoil, 918 F.2d at 1045 (citing cases and
concluding that 13 business trips by foreign corporation's
employees into New York did not constitute substantial and
continuous solicitation where the trips were "of short duration,
were by different employees, involved a number of accounts, and
. . . occurred sporadically over a period of eighteen months");
Pacamour Bearings, Inc. v. Molon Motors & Coil, Inc., 102 A.D.2d
355, 357 (N.Y. App. Div. 1984) (concluding that eight trips to
New York by sales managers over 15-month period and nine trips
to New York by sales directors over 20-month period were
insufficient to support personal jurisdiction).  K-Line has
averred no facts which, if credited, show that Plano employees

visit New York with greater frequency than the employees in
Landoil or Pacamour Bearings.

### 4.   Website

Plano's website provides consumers with product information
and the locations of retailers who carry Plano products.   Plano
does not sell goods directly via its website.   This type of
website does not constitute solicitation of business in New York
because it is not targeted at New York.   In re Ski Train Fire,
230 F. Supp. 2d 376, 383 (S.D.N.Y. 2002) ("[T]he fact that a
foreign corporation has a website accessible in New York is
insufficient to confer jurisdiction under CPLR § 301.")
(quotations omitted); Yanouskiy v. Eldorado Logistics Sys., No.
05 Civ. 2202, 2006 U.S. Dist. LEXIS 76604, at *7-8 (E.D.N.Y.
Oct. 20, 2006) ("It has often been held that the mere existence
of a website accessible within New York is insufficient to
establish general jurisdiction over a defendant here.") (citing
cases); Rodriguez v. Circus Circus Casinos, Inc., No. 00 Civ.
6559, 2001 U.S. Dist. LEXIS 61, at *5 (S.D.N.Y. Jan. 9, 2001).

### 5.   Advertising

Plano engages in print and television advertising in New
York.   Advertising is insufficient to establish general personal
jurisdiction under CPLR § 301, particularly where, as here, the
advertising in New York did not generate a substantial amount of

business in New York.  Lane v. Vacation Charters, Ltd., 750 F. Supp. 120, 124 (S.D.N.Y. 1990) (citing cases).

### 6.   Telephone Listing

The telephone listing for Plano Molding in New York does not show that Plano is doing business in New York under CPLR § 301.  Records produced by Verizon, the telephone company who administers the New York telephone number listed for Plano Molding, show that it sends the bills for its telephone service to DoubleClick, Inc., not Plano.  Documents produced by DoubleClick state that the telephone number is "associated with one of [DoubleClick's] ISDN circuits for video conferencing." (DeRose Aff. Ex. 1.)  While Plano apparently rented a hotel room at the address listed for the telephone number when it attended a toy show during the early/mid 1990s, K-Line has asserted no facts which show that Plano currently maintains the number, or that Plano ever maintained an office in New York.  Their unsupported allegation that nobody would maintain a number listed for "Plano Molding" without the input or support of the Plano Molding Company that is a party in this action is merely conclusory and is insufficient to support personal jurisdiction. See Jazini, 148 F.3d at 185.

### 7.   Prior Suits

Plano initiated a patent suit in New York in 1991.  See Red Box Toy, No. 91 Civ. 4613 (S.D.N.Y. Jul. 9, 1991).  The case has

17

been closed since March 18, 1992.  That Plano once brought suit
in New York fifteen years ago does not establish that it is
presently doing business in New York.  See Andros Companie
Maritima S.A. v. Intertanker Ltd., 714 F. Supp. 669, 675
(S.D.N.Y. 1989) ("[T]he relevant time frame for the
jurisdictional inquiry under § 301 is at the time of service of
the summons and complaint.") (citing Gaboury v. Central Vermont
Ry. Co., 250 N.Y. 233, 236, 165 N.E. 275 (N.Y. 1929) (Cardozo,
C.J.)).

### 8.   Combination of Contacts

Considering all of Plano's contacts with New York in
combination with each other and in the light most favorable to
K-Line, the Court concludes that Plano is not engaged in
substantial solicitation in New York, and that it is not engaged
in such a continuous and systematic course of doing business in
New York as to subject it to personal jurisdiction under Section
301 of the CPLR.

Accordingly, the Court lacks general personal jurisdiction
over Plano.

### D.   K-Line's Application for Additional Discovery from Plano

K-Line argues that, even if the above evidence does not
establish personal jurisdiction over Plano, it demonstrates a
colorable enough basis for jurisdiction that the Court should

permit yet another round of jurisdictional discovery.  K-Line
argues that the telephone listing and the Red Box Toy patent
litigation in particular constitute new facts which merit
additional exploration.

"Discovery on the issue of personal jurisdiction may be
permitted in the court's discretion if plaintiffs allege facts
that would support a colorable claim of jurisdiction."
Volkswagen de Mexico, S.A. v. Germanischer Lloyd, 768 F. Supp.
1023, 1028 (S.D.N.Y. 1991).  "[A] plaintiff may be allowed
limited discovery with respect to the jurisdictional issue; but
until she has shown a reasonable basis for assuming
jurisdiction, she is not entitled to any other discovery."
Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir.
1990).

Magistrate Judge Freeman initially granted jurisdictional
discovery because K-Line had identified a colorable basis for
jurisdiction.  Plano complied with K-Line's discovery requests
by producing two witnesses and various other materials.  For all
the reasons stated above, the new facts uncovered by this
discovery do not support personal jurisdiction over Plano.
Moreover, neither the telephone listing, nor the Red Box Toy
litigation, nor any of the other factual allegations shows that
additional discovery would potentially reveal a connection

between Plano and New York sufficient to establish general
personal jurisdiction.

Accordingly, K-Line's application for additional
jurisdictional discovery from Plano is DENIED, and Plano's
Motion to Dismiss the Third-Party Claims of K-Line is GRANTED.

### III. Plano's Motion to Dismiss the Claims of Union Pacific

Plano's Motion to Dismiss the claims of Union Pacific
raises the same issues as its Motion to Dismiss the claims of K-
Line.  Union Pacific's Amended Third-Party Complaint contains
only spare, conclusory allegations of personal jurisdiction over
Plano.  (See Union Pacific Am. Compl. ¶ 11 ("Third-party
defendant Plano is subject to personal jurisdiction in the State
of New York.").)  Union Pacific argues that these allegations
are sufficient at this stage in the litigation and, in the
alternative, that it is entitled to jurisdictional discovery
because (1) Plano products are sold by retailers in New York;
(2) Plano receives income from retail sales of those products in
New York; and (3) Plano's website directs customers to retailers
in New York that carry its products.  The requested
jurisdictional discovery has since taken place.  The Court has
already addressed each of these factual allegations and
determined that, even if credited, they are insufficient to
support personal jurisdiction over Plano.  See supra Part II.C.
For the same reasons, discovery about these areas would not

20

reveal a connection between Plano and New York sufficient to establish general personal jurisdiction.  See supra Part II.D. The Court will not permit Union Pacific to engage "in a fishing expedition when little more exists than [its] bare assertions that jurisdiction is proper." Manhattan Life Ins. Co. v. A.J. Stratton Syndicate, 731 F. Supp. 587, 593 (S.D.N.Y. 1990).

Accordingly, Union Pacific's application for jurisdictional discovery is DENIED and Plano's Motion to Dismiss the Third-Party Complaint of Union Pacific is GRANTED.

## IV.  Personal Jurisdiction over CMT

The parties agree that CMT itself has insufficient contacts with New York to support personal jurisdiction.  K-Line argues that CMT is part of the En Jinn Group ("En Jinn"), a multinational corporation based in Taiwan that has operations throughout the world.  (See Kimball Aff. ¶¶ 4, 8.)  K-Line argues that the Court has jurisdiction over CMT because of its relationship with En Jinn and its member companies.  For the following reasons, K-Line has failed to assert facts which, if credited, would support personal jurisdiction over CMT based on its relationship with En Jinn.

### A.  Applicable Law

A non-domiciliary corporation is subject to New York jurisdiction if (1) it is a "mere department" of a parent that is present in New York, see Volkswagenwerk Aktiengesellschaft v.

Beech Aircraft Corp., 751 F.2d 117, 120-21 (2d Cir. 1984), or (2) there is an agency relationship such that one company conducts the business of the other in New York, see Data-Stream AS/RS Tech., LLC. v. Acequip Ltd., No. 02 Civ. 2089, 2002 WL 1683736, at *6 (S.D.N.Y. July 24, 2002); Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44 (N.Y. 1967) (concluding that a non-domiciliary corporation is subject to New York jurisdiction if its corporate affiliate performs functions on its behalf in New York "which [the non-domiciliary corporation] could do were it here by its own officials.").

Under the "mere department" theory, a simple business relationship is insufficient to impute jurisdiction. Beech Aircraft, 751 F.2d at 120 ("[T]he presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation."); Delagi v. Volkswagenwerk A.G., 29 N.Y.2d 426, 432, 278 N.E.2d 895 (N.Y. 1972) ("The control over the subsidiary's activities . . . must be so complete that the subsidiary is, in fact, merely a department of the parent.").

In conducting the "mere department" analysis, New York courts (1) require common ownership and also consider (2) the financial dependency of the subsidiary; (3) interference in the selection of the subsidiary's executive personnel and failure to

observe corporate formalities; and (4) control over the
subsidiary's marketing and operational policies.  Beech
Aircraft, 751 F.2d at 120-22 ("New York courts regard one factor
as essential . . . and three others as important.  The essential
factor is common ownership."); Stratagen Dev. Corp. v. Heron
Int'l N.V., 153 F.R.D. 535, 546 (S.D.N.Y. 1994); Beech Aircraft
Corp., 751 F.2d at 120 ("[N]early identical ownership interests
must exist before one corporation can be considered a department
of another corporation for jurisdictional purposes.").  A
corporate entity is a "mere department" of a parent company
where the parent's control is pervasive enough that the
corporate separation is "more formal than real."  In re Ski
Train Fire, 230 F. Supp. 2d at 409.

> **B.    Relationship Between CMT and En Jinn, and En
>         Jinn's Connections with New York**

Viewed in the light most favorable to K-Line, the
pleadings, affidavits, and discovery materials establish the
following facts:  CMT is an Illinois corporation with its
principal place of business in Carbondale, Illinois.  CMT is
owned entirely by M. T. Chang, a resident of Taiwan.  CMT
imports injection molds and exports electronic components such
as integrated circuit chips.  (Lien Dep. 7:1-11.)[5]  The En Jinn

---

[5] Monica Lien is the office manager of CMT and has been an employee for more
than ten years.  (Lien Dep. 6:18, 7:20.)

23

Group is a multinational corporation based in Taiwan.  En Jinn
manufactures and sells a broad range of products, including
bumpers, television sets, personal computers, cellular phones,
transformers, instrument displays, digital cameras, and
dishwashers.  (Kimball Aff. ¶ 4, 8.)  Approximately 80% of CMT's
business involves exporting electronic components (Lien Dep.
48:6-10.), and this portion of its business does not involve En
Jinn.  (Jensen Aff. Ex. L. Interrog. 11.)

     CMT's letterhead states that CMT is "A Member of En Jinn
Group Company."  (Jensen Aff. Ex. L.)  En Jinn's website lists
CMT, Kunshan, and five other companies under the heading
"Contact Information" as members or constituents of the En Jinn
Group.  (Kimball Aff. Ex. C; Jensen Aff. Ex. A.)  CMT's
corporate President and Secretary are both residents of Taiwan.
(Jensen Aff. Ex. A.)  En Jinn promotional materials identify CMT
as En Jinn's "Branch in USA" and include the establishment of
CMT as an event on En Jinn's timeline.  (See Jensen Aff. Ex. G
at 4 ("1991 -- Established CMT International in USA (Branch in
USA)".)  En Jinn has offices in Taiwan, China, Japan, and the
United States.  (Kimball Aff. Ex. C.)  En Jinn's major customers
in the United States include GE (Jensen Aff. Ex. G.), Toshiba,
and Phillips (Jensen Aff. Ex. G, P-Q).  It is undisputed that GE
is a New York domiciliary (Jensen Aff. Ex. G, O.), and that

Toshiba and Phillips have headquarters in New York City (Jensen Aff. G, P-Q.)

The commercial documents underlying the shipment of the steel molds refer to CMT, En Jinn, and Kunshan interchangeably. (See, e.g., Jensen Aff. Ex. B ("CMT (EnJinn Group) is to supply the top mold plates.").)  En Jinn lists Kunshan -- also a third-party Defendant in this action -- as one of its member companies.  In the shipment documents, CMT employees refer to Kunshan as "our factory" (See, e.g., Jensen Aff. Ex. D at CMT0043, CMT0095; Ex. I at 14), and CMT refers to the "Tool Shop" as "CMT/EnJinn/Kunshan" (Jensen Aff. Ex. C at CMT0047.) CMT uploaded plans or specifications pertaining to the steel molds at issue to an internet ftp site maintained by En Jinn. (Jensen Aff. Ex. D.)  Representatives of CMT traveled with Plano to Taiwan to inspect the design of the molds.  (Jensen Aff. Ex. I at 13-16.)

### C.   Analysis

Even construed in the light most favorable to K-Line, the facts do not support personal jurisdiction over CMT under either the "mere department" theory or the agency theory.  K-Line essentially argues that personal jurisdiction can be imputed to CMT because the En Jinn Group and CMT present themselves to the world as a unified company.  At best, the facts asserted by K-Line show that En Jinn is an affiliation of related companies

25

that cooperate in the marketing, sale, and production of products.  This is insufficient to support jurisdiction.

### 1.   "Mere Department" Theory

#### a.   Common Ownership and Other Factors

K-line has failed to assert facts which establish common ownership or any of the other "mere department" factors.  That CMT's owner lives in Taiwan does not establish that he is also the owner of En Jinn or Kunshan.[6]  That CMT letterhead and marketing material identify it as a member of the En Jinn Group and that En Jinn refers to the formation of CMT as its "branch in USA" on its timeline does not establish common ownership or show failure to abide by corporate formalities.  See In re Ski Train Fire, 230 F. Supp. 2d at 411 (sharing a "unified presentation" and using the same corporate logo "shows that [the parent] exerts some control over [the subsidiary's] marketing policies, but it is insufficient to show 'pervasive' or 'complete' control, or that the distinction between the companies is more formal than real."); J.L.B. Equities v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) ("The Court is not persuaded that failure to distinguish between a subsidiary on a webpage is sufficient to show that the parent controls the subsidiary's marketing and operational policies.").

---

[6] K-Line's argument that CMT may be owned by entities other than M. T. Chang is merely a conclusory allegation with no factual support.

That the commercial documents refer to CMT, En Jinn, and Kunshan interchangeably is insufficient to establish common ownership -- rather, it shows only that the companies are repeat players in the steel mold business.  Uploading design specifications is precisely the sorts of behavior that one would expect from separate companies working together to design and produce a manufactured product like a steel mold.  As common ownership is an essential factor, failure to establish common ownership is fatal to a finding of jurisdiction under the "mere department" theory.

Moreover, there is no evidence whatsoever that CMT is financially dependent on any other company.  There is no evidence that En Jinn or an En Jinn company interferes in the selection or assignment of CMT's personnel.  As discussed above, the evidence that En Jinn exhibits some degree of control over CMT's marketing policies is insufficient to support jurisdiction, and no evidence shows any meaningful failure to abide by corporate formalities.

Even resolving all doubts in K-Line's favor, K-Line asserts no facts which contradict CMT's claim that 80% of its business is entirely unrelated to En Jinn.  K-Line asserts no facts which contradict CMT's claim that it has no overarching contract with En Jinn and works with En Jinn only on an order-by-order basis. (Lien Dep. 26:20-27:25.)  CMT cannot be a "mere department" of

En Jinn if so small a portion of its business is related to En Jinn.

Accordingly, K-Line has failed to assert facts which show that CMT is a "mere department" of En Jinn, Kunshan, or another En Jinn Group company.

### b.   En Jinn's Connections with New York

Even if CMT were a "mere department" of En Jinn, K-Line has failed to assert facts which establish that En Jinn or Kunshan are jurisdictionally present in New York.  As explained supra in Part II.A, Section 301 of the CPLR  authorizes general personal jurisdiction over a foreign corporation where the corporation is engaged in a continuous and systematic course of doing business in New York.  Landoil, 918 F.2d at 1043 (citing cases).  K-Line's sole support for its position that En Jinn is jurisdictionally present in New York is that En Jinn's website lists General Electric -- a New York corporation -- and Toshiba and Phillips -- corporations with headquarters in New York -- as some of its major customers.  K-Line has presented no evidence that CMT sold any products to these companies in New York or that it has actually done any business at all in New York.  To the contrary, En Jinn's website lists Toshiba as a major customer in Asia and Phillips as a major customer in Europe. (Jensen Aff. Ex. G at 6.)

Even assuming arguendo that En Jinn engaged in substantial
solicitation of business in New York, "solicitation of business
alone will not justify a finding of corporate presence in New
York." Landoil, 918 F.2d at 1043-44 (quotations omitted).  K-
Line has presented no evidence whatsoever of any additional
"activities of substance," such as property, office space, or
employees in New York, as required under the "solicitation plus"
test for jurisdiction.  Overseas Media, 407 F. Supp. 2d at 569.

Accordingly, K-Line has failed to aver facts which show
that En Jinn -- and therefore CMT -- is jurisdictionally present
in New York.

### 2.        Agency Theory

For many of the same reasons, the facts asserted by K-Line
do not show that En Jinn, Kunshan, or another En Jinn company
acts as CMT's agent in New York.  Neither party discusses the
agency theory in great detail.  The Court will not infer an
agency relationship simply because the companies coordinate
their design and manufacturing activities.  Cf. Insight Data
Corp. v. First Bank Sys., Inc., No. 97 Civ. 4896, 1998 U.S.
Dist. LEXIS 3604, 1998 WL 146689, at *16 (S.D.N.Y. Mar. 25,
1998) ("Conclusory allegations of an agency relationship between
Card Services and U.S. Bancorp are insufficient to make out a
prima facie showing of personal jurisdiction over U.S. Bancorp
under § 301.").  And even assuming arguendo that Kunshan acted

29

as CMT's agent when it manufactured the steel molds, it is undisputed that the manufacturing took place in China, not in New York.  The agent corporation must conduct the business of the principal corporation <u>in New York</u> to support jurisdiction. K-Line has presented no evidence whatsoever that En Jinn or Kunshan engaged in any activities on behalf of CMT in New York.

Accordingly, K-Line has failed to assert facts which establish jurisdiction over CMT under the agency theory.

### D.   <u>K-Line's Application for Additional Discovery from CMT</u>

In its moving papers, K-Line all but acknowledges that the asserted facts are insufficient to support personal jurisdiction over CMT.  K-Line argues primarily that the facts establish a colorable basis for jurisdiction, and that the Court should therefore grant a second round of additional jurisdictional discovery as to CMT's relationship with the En Jinn Group and the En Jinn Group's contacts with New York.  In specific, K-Line seeks to depose M. T. Chang, the owner of CMT and a resident of Taiwan.  Magistrate Judge Freeman previously denied K-Line's application to depose Chang.

"Discovery on the issue of personal jurisdiction may be permitted in the court's discretion if [Third-Party] plaintiffs allege facts that would support a colorable claim of jurisdiction."  <u>Volkswagen de Mexico, S.A. v. Germanischer</u>

Lloyd, 768 F. Supp. 1023, 1028 (S.D.N.Y. 1991); see supra Part
II.D.  This Court may set aside Magistrate Judge Freeman's
decision to deny K-Line's request to depose Chang only if it was
clearly erroneous or contrary to law.  See 28 U.S.C.
636(b)(1)(A) ("A judge of the court may reconsider any pretrial
matter . . . where it has been shown that the magistrate
[judge]'s order is clearly erroneous or contrary to law."); Fed.
R. Civ. P. 72(a).  An order is clearly erroneous where the
reviewing court has a "definite and firm conviction that a
mistake has been committed."  S.E.C. v. Thrasher, No. 92 Civ.
6987, 1995 U.S. Dist. LEXIS 10775, at *36 (S.D.N.Y. July 31,
1995) (quoting Litton Indus. v.  Lehman Bros. Kuhn Loeb Inc.,
734 F. Supp. 1071, 1080 (S.D.N.Y. 1990)).  An order is contrary
to law if it "fails to apply or misapplies relevant statutes,
case law, or rules of procedure."  Id.  A magistrate judge is
afforded broad discretion when deciding discovery matters.  Id.
(citing Dubin v. E.F. Hutton Group, Inc., 125 F.R.D. 372, 737-74
(S.D.N.Y. 1989)).

Magistrate Judge Freeman's decision was not clearly
erroneous.  K-Line has been given ample opportunity to pursue
its theory that personal jurisdiction can be imputed to CMT
through the En Jinn Group companies.  The facts asserted do not
support such a theory.  There is no reason to believe that M. T.
Chang's answers to questions regarding the ownership of or

31

relationship between CMT and En Jinn would be any different than those in Ms. Lien's declarations and deposition testimony or CMT's answers to K-Line's interrogatories.  Magistrate Judge Freeman was well within her discretion in determining that the substantial time and expense of traveling to Taiwan to depose Mr. Chang were not justified.

Accordingly, K-Line's application for additional jurisdictional discovery is DENIED, and CMT's Motion to Dismiss the Third-Party Complaint of K-Line is GRANTED.

## V.   Due Process and Other Issues

Finding no jurisdiction under the law of the forum state over either Plano or CMT, the Court lacks personal jurisdiction over these Third-Party Defendants and does not address the additional constitutional requirements for personal jurisdiction under the "minimum contacts" analysis.  For the same reason, the Court has no reason to address the portions of the Motions to Dismiss which relate to Rule 12(b)(6), failure to state a claim upon which relief can be granted, or Rule 12(b)(3), improper venue.

## Conclusion

For the foregoing reasons, the three Motions to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction of Third-Party Defendants CMT and Plano Molding are GRANTED.

SO ORDERED:

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:      New York, New York
            June 13, 2007